[Cite as *Pennington v. Mercy Regional Med. Ctr.*, 2024-Ohio-1198.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

ANGELA PENNINGTON

    Appellant

    v.

MERCY REGIONAL MEDICAL
CENTER, et al.

    Appellees

C.A. No.    23CA011969

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    19 CV 199073

DECISION AND JOURNAL ENTRY

Dated: March 29, 2024

CARR, Judge.

{¶1}    Plaintiff-Appellant Angela Pennington appeals the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}    In December 2015, Ms. Pennington underwent surgery to have her thyroid removed.  That surgery took place at Defendant Mercy Regional Medical Center.  Defendant-Appellee Faizi Haq Ali, M.D. is the pathologist who examined the thyroid and issued a pathology report.  No malignancy was described therein.  Dr. Ali was an employee of Defendant-Appellee Regional Pathology Associates, Inc. at the time.

{¶3}    In October 2018, Ms. Pennington underwent another surgery at University Hospitals to remove a mass from her neck.  The pathologist there diagnosed the mass as metastatic follicular variant of papillary thyroid carcinoma.  Ms. Pennington's slides from her thyroid surgery were then reviewed and University Hospitals pathologists concluded that thyroid cancer was

present in the 2015 slides. Following the cancer diagnosis, Ms. Pennington was again taken into surgery where cancer was discovered in multiple lymph nodes. Additional testing revealed metastatic cancer in Ms. Pennington's lung.

{¶4} In August 2019, Ms. Pennington filed suit against Dr. Ali, Regional Pathology Associates, Inc., and Mercy Regional Medical Center. Ms. Pennington's complaint contained two counts: one sounding in medical malpractice related to the misdiagnosis of Ms. Pennington's thyroid cancer; and the second alleging negligence concerning hospital and practice polices.

{¶5} Ultimately, the matter proceeded to a jury trial. Ms. Pennington dismissed her claims against Mercy Regional Medical Center. The jury ultimately rejected Ms. Pennington's arguments and found Dr. Ali not negligent.

{¶6} Ms. Pennington filed a motion for a new trial pursuant to Civ.R. 59(A)(9), which was opposed by Dr. Ali and Regional Pathology Associates, Inc. The trial court denied Ms. Pennington's motion for new trial. Ms. Pennington has appealed, raising three assignments of error for our review, which will be addressed together as they are interrelated.

II.

### ASSIGNMENT OF ERROR I

PLAINTIFF-APPELLANT RESPECTFULLY PLEADS THAT THE TRIAL COURT MADE AN ERROR OF LAW UNDER EVID.R. 407 "SUBSEQUENT REMEDIAL MEASURES[,]" AND ABUSED ITS DISCRETION, PREJUDICING PLAINTIFF-APPELLANT, WHEN IT MISSTATED OHIO EVIDENCE RULE 407 "SUBSEQUENT MEASURES" AND PRECLUDED PLAINTIFF-APPELLANT FROM USING THE "IMPEACHMENT EXCEPTION" TO EVID.R. 407.

### ASSIGNMENT OF ERROR II

PLAINTIFF-APPELLANT RESPECTFULLY PLEADS THAT THE TRIAL COURT MADE AN ERROR OF LAW UNDER EVID.R. 616 "METHODS OF IMPEACHMENT" AND ABUSED ITS DISCRETION, PREJUDICING

PLAINTIFF-APPELLANT, WHEN IT DID NOT ALLOW THE USE OF EVID.R. 616(C) TO IMPEACH DEFENDANT FAIZI HAQ ALI, M.D.

## ASSIGNMENT OF ERROR III

PLAINTIFF-APPELLANT RESPECTFULLY PLEADS THAT THE COURT MADE AN ERROR UNDER EVID.R. 612 "WRITINGS USED TO REFRESH MEMORY[,]" AND ABUSED ITS DISCRETION WHEN PLAINTIFF'S COUNSEL REFRESHED DR. ALI'S MEMORY WITH TWO OF HIS PATHOLOGY REPORTS, AND THEN PLAINTIFF'S COUNSEL WAS INSTRUCTED TO GO NO FURTHER TO IMPEACH HIM.

{¶7} While it is somewhat difficult to discern from Ms. Pennington's briefing, given the standard of review cited, it appears Ms. Pennington is challenging the trial court's ruling on her motion for a new trial in all three assignments of error. However, to the extent that Ms. Pennington may be challenging evidentiary rulings made during the trial, for the reasons detailed below, we cannot say that reversible error has been demonstrated.

{¶8} Essentially, Ms. Pennington asserts that the trial court erred in denying her motion for new trial as she was entitled to impeach Dr. Ali's testimony using the pathology reports of two of Ms. Pennington's relatives. In Ms. Pennington's first assignment of error, Ms. Pennington argues that she was attempting to use Evid.R. 407 to impeach Dr. Ali's testimony and that the trial court misapplied the rule. In Ms. Pennington's second assignment of error, she asserts that the trial court misapplied Evid.R. 616(C) in denying her request to impeach Dr. Ali with the reports. Finally, Ms. Pennington alleges in her third assignment of error that the trial court did not appropriately apply Evid.R. 612.

{¶9} Pursuant to Civ.R. 59(A), "[a] new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: * * * (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application. In

addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown." Civ.R. 59(A)(9).

{¶10} "Depending upon the basis of a motion for a new trial, this Court reviews the trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review. [If] the basis of the motion involves a question of law, the de novo standard of review applies, and when the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies." (Internal quotations and citations omitted.) *Schutte v. Fitzgibbon*, 9th Dist. Summit No. 29686, 2021-Ohio-2669, ¶ 37.

**Background**

{¶11} At trial, during Dr. Ali's cross-examination, Ms. Pennington's counsel asked Dr. Ali the following question: "Have you had any other cases brought to your attention where you reviewed the slides and you didn't find the follicular variant of papillary carcinoma but another pathologist did[?]" Dr. Ali answered, "No." Ms. Pennington's counsel then asked for a side bar, which was granted. Shortly into the side bar, the jury and Dr. Ali were dismissed from the courtroom. A very lengthy discussion took place thereafter.

{¶12} Ms. Pennington's attorney pointed to Evid.R. 616(C) and stated that he wished to introduce extrinsic evidence to contradict the truthfulness of Dr. Ali's statement and that that extrinsic evidence would not be admitted to the jury. Ms. Pennington's counsel indicated that the extrinsic evidence would be pathology reports of Ms. Pennington's relatives. Ms. Pennington's attorney claimed that, in those other reports, Dr. Ali interpreted the thyroid specimens as benign and they were later interpreted at University Hospitals and found to contain the follicular variant of papillary carcinoma. Ms. Pennington's attorney maintained that the reports evidence that Dr.

Ali was aware of having his diagnoses changed from benign to malignant and he therefore lied during his deposition and trial testimony.

{¶13} The trial court expressed concern that allowing the jury to view the other pathology reports would bring into question for the jury whether Dr. Ali was negligent in the other cases, even though that that was not an issue to be decided in Ms. Pennington's case or it could cause the jury to presume Dr. Ali was negligent in the instant matter because of the changes in the other reports. The trial court also stated that it did not believe that a cautionary instruction to the jury would be sufficient to address the issue.

{¶14} The trial court then asked for clarification that Ms. Pennington's attorney's intent was to impeach Dr. Ali's testimony that he never had any of his pathology reports overturned by an outside hospital. Ms. Pennington's counsel agreed and then defense counsel indicated that defense counsel believed that Dr. Ali's testimony could be read that he merely did not recall any of his reports being overturned.

{¶15} The trial court next reviewed the deposition testimony of Dr. Ali, which is not in this Court's record. Ms. Pennington's attorney then explained his intent to bring up this same topic during the testimony of Ms. Pennington and during the testimony of another pathologist from Regional Pathology Associates, Inc. The trial court expressed its opinion that Ms. Pennigton could not testify about her relatives' experiences with Dr. Ali. The trial court also stated that it viewed Dr. Ali's answer as not an outright denial but as Dr. Ali did not recall.

{¶16} Ms. Pennington's counsel then asked if he could use the reports to refresh Dr. Ali's recollection. The trial court indicated that Ms. Pennington's counsel could give the reports to Dr. Ali, ask if his recollection was refreshed, and then ask the original question again. Ms. Pennington's counsel stated that he wished to have the reports on the screen while Dr. Ali was

reviewing the reports. The trial court indicated that that was not appropriate under the rule. The trial court went on to state that Ms. Pennington's counsel would then be stuck with the answer because the trial court believed that under Evid.R. 616(C) extrinsic evidence was not allowed as the facts in the report were not relevant to whether Dr. Ali fell below the standard of care in the instant matter.

{¶17} Ms. Pennington's counsel then questioned the trial court about his ability to question Ms. Pennington and the other pathologist about these reports. After a discussion concerning Ms. Pennington and her family history, Ms. Pennington's counsel asked if the other reports could be brought up as they pertained to the other Regional Pathology Associates, Inc. pathologist as it would relate to Ms. Pennington's claim that there should have been a policy to have certain cases reviewed. The trial court then indicated that, because the reports of Ms. Pennington's relatives were created years after Ms. Pennington's initial surgery it would not be admissible, and if the practice did make changes, they could be considered subsequent remedial measures.

{¶18} After the lengthy discussion, Dr. Ali was brought back into the courtroom and the trial court explained to Dr. Ali what was going to happen. Ms. Pennington's attorney then repeated the original question to Dr. Ali and handed him the pathology reports, which were marked as exhibits. Those exhibits are not part of this Court's record; however, it appears that copies of them accompany Ms. Pennington's motion for a new trial. After Dr. Ali reviewed the exhibits, the jury was called back in. Ms. Pennington's counsel asked if Dr. Ali's memory was refreshed. Dr. Ali responded that it was partially refreshed. Ms. Pennington's counsel then asked Dr. Ali whether he had any other cases brought to his attention where he reviewed the slides, did not find the follicular variant of papillary carcinoma, but another pathologist did. Dr. Ali responded in the affirmative.

{¶19} Ms. Pennington's attorney was then not allowed to question Dr. Ali about the number of occasions that that occurred. Dr. Ali maintained that he was not being negligent but admitted that if he received another thyroid specimen in which he was uncertain if it was benign or malignant he would obtain a second opinion.

{¶20} Thus, in summary, the trial court's main concern with respect to allowing the jury to view the pathology reports was that the information could reasonably cause the jury to suspect Dr. Ali's negligence in other instances, which were not at issue in the matter at hand, and use those inferences improperly against Dr. Ali in the instant matter. The trial court did not believe a jury instruction would be sufficient to dispel the prejudicial effect of viewing the reports.

## Discussion

## Evid.R. 407

{¶21} In Ms. Pennington's first assignment of error, she discusses Evid.R. 407, subsequent remedial measures, and explains how she believes the trial court erroneously applied the rule. Evid.R. 407 states:

> When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

{¶22} Ms. Pennington maintains that she planned to use the reports to impeach Dr. Ali and thus was permitted to do so under the rule. However, the discussion she references from the trial transcript relates to the trial court's response as to why the reports could not be used in conjunction with the testimony from the other pathologist from Regional Pathology Associates, Inc., not Dr. Ali.

{¶23} At trial, Ms. Pennington's attorney explained that he wanted to question the other pathologist about the reports as it would relate to whether the practice was negligent with respect to its policies concerning reviewing cases. The trial court then explained why that would not be allowed. The trial court noted that the reports could not have influenced policy in effect at the time of Dr. Ali's original diagnosis because the reports were not in existence at that time. The trial court also noted that any changes in policy that were made following the 2015 missed thyroid cancer diagnosis, if they were made, would be a subsequent remedial measure.

{¶24} Ms. Pennington has not explained how the trial court was incorrect with respect to the use of the reports in conjunction with the other pathologist's testimony. Moreover, Ms. Pennington has only submitted a partial transcript of the trial, consisting of only the cross examination of Dr. Ali. Based on the record before us, we cannot even confirm that the other pathologist testified or what the other pathologist testified to if the other pathologist did testify. "App R. 9(B) requires that the appellant provide a transcript of the proceedings which is adequate for a determination of the assigned errors upon appellate review. This requirement falls upon the appellant pursuant to his burden of showing error by reference to matters in the record." *Jones v. Bartley*, 9th Dist. Summit No. 16216, 1993 WL 473824, *1 (Nov. 10, 1993).

{¶25} Further, pursuant to Evid.R. 103(A), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *." In addition, Civ.R. 61 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶26} Here, without the aid of a complete transcript we cannot say with any confidence that a substantial right of Ms. Pennington was affected by the exclusion of evidence related to the reports. Even if the trial court somehow erred in its interpretation of Evid.R. 407, Ms. Pennington has not shown that the trial court erred in denying her motion for a new trial. In the absence of a record sufficient to determine whether the trial court's alleged error in excluding evidence proved prejudicial to Ms. Pennington, we are required to presume the validity of the lower court's proceedings and affirm. *Jones* at \*2.

### Evid.R. 616(C)

{¶27} Ms. Pennington appears to argue in her second assignment of error that the trial court misapplied Evid.R. 616(C); however, her argument is difficult to follow. Evid.R. 616(C) provides:

> Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
>
> (1) Permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 803(18);
>
> (2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence.

{¶28} Within this assignment of error, Ms. Pennington's argument consists largely of a recitation of various evidentiary rules without an explanation of how they apply to the specific facts before us. Ms. Pennington raises numerous issues, including that the evidence at issue was not extrinsic evidence, even though Ms. Pennington's counsel himself referred to the evidence as extrinsic evidence at trial. Ms. Pennington also seems to assert that the evidence may have been admissible pursuant to Evid.R. 616(A), even though that too was not raised at trial.

{¶29} Irrespective, for the reasons discussed above, we cannot say that Ms. Pennington has demonstrated that the trial court erred in denying her motion for new trial. Ms. Pennington

has not provided this Court with a complete transcript of the trial and thus it is impossible to say that Ms. Pennington's substantial rights were impacted by any error on the part of the trial court. *See Jones*, 1993 WL 473824, at *2.

### Evid.R. 612

{¶30}  Ms. Pennington asserts in her third assignment of error that the trial court erred in its application of Evid.R. 612 (writing used to refresh memory) as her attorney should have been permitted to ask additional questions to impeach Dr. Ali after his recollection was refreshed.  Ms. Pennington maintains that allowing questioning about the details of the reports would not have been unduly prejudicial.  *See* Evid.R. 403 ("Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.").

{¶31}  Again, the trial court explained in great detail why it felt that informing the jury of the details of the information in the reports would have been unduly prejudicial and that the prejudice would not be alleviated by a jury instruction.  Ms. Pennington was permitted to impeach Dr. Ali to a limited degree.  Ms. Pennington's attorney got Dr. Ali to change his answer to a question after Dr. Ali was allowed to review the pathology reports.  Thus, the jury had before it the fact that Dr. Ali had changed his answer.

{¶32}  Irrespective, even if we were to agree that the trial court erred in excluding questioning related to the details of the pathology reports, Ms. Pennington has not demonstrated that the trial court erred in denying her motion for a new trial.  Absent a complete trial transcript, we must presume that substantial justice was done and Ms. Pennington's substantial rights were not prejudiced.  *See Jones*, 1993 WL 473824, at *2.

{¶33}  Ms. Pennington's assignments of error are overruled.

III.

**{¶34}** Ms. Pennington's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

THOMAS J. MISNY, Attorney at Law, for Appellant.

CHRISTINE SANTONI and MATTHEW TURKALJ, Attorneys at Law, for Appellees.